IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Willie James Singletary, #304368 | ) | |
| | ) | |
| Petitioner, | ) | Case No. 2:10-1305-CMC-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Warden of Kershaw Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, a state prisoner, seeks habeas relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on Respondent's motion for summary judgment. [Doc 17.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner brought this habeas action on May 24, 2010. Respondent moved for summary judgment on September 7, 2010. By order filed September 15, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 22, 2010, Petitioner filed a response in opposition to Respondent's motion for summary judgment.

## BACKGROUND

Petitioner is currently confined at Kershaw Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of

Lee County.  Petitioner was indicted by the Lee County Grand Jury during the February

2004 Term of the Court of General Sessions for criminal sexual conduct with a minor, first

degree.  [App. 284–85.]  On August 12, 2004, Petitioner proceeded to a jury trial, where

he was represented by Charlie J. Johnson, Jr. ("Johnson").  [App. 1–280.]  Petitioner was

found guilty of criminal sexual conduct with a minor, first degree.  [App. 268.]  The

Honorable Clifton Newman sentenced Petitioner to ten years confinement.  [App. 278–79.]

**Underlying Facts**

The South Carolina Court of Appeals outlined the facts of the crime as follows:

> [Petitioner] committed sexual misconduct against the victim, S.S., at some point on December 6th or 7th, 2003.[1]  At the time of the assault, the nine-year-old victim lived with her mother and three siblings in Petitioner's mobile home.

> S.S. testified that on December 7, 2003, she was in the kitchen of [Petitioner's] mobile home when he grabbed her and pulled her into his bedroom.  Once inside [Petitioner's] bedroom, S.S. testified that he shut the door and pulled down both of their pants. With his hands over her mouth, he raped her digitally, anally, and vaginally.  Conversely, in [Petitioner's] confession, he claimed the incident occurred at the instigation of the victim outside of his mobile home on December 6, 2003.

> On December 8, 2003, S.S.'s school teacher noticed that S.S. was frequently visiting the restroom, so she took S.S. to the school nurse.  School officials contacted DSS, and further medical examination revealed that S.S. had recently contracted Chlamydia, a sexually-transmitted disease.  In addition, the examination showed S.S. experienced external injury as well as recent penetration to her anus but no conclusive penetration to her vagina.

---

[1]  As stated below, [Petitioner's] confession and the victim's testimony conflict regarding the day and location of the sexual misconduct, which is reflected in [Petitioner's] indictment (charging [Petitioner] with sexual misconduct "on or between December 6, 2003[] and December 7, 2003").

Based on the victim's report of the incident, the police contacted [Petitioner], and he voluntarily came to the police station. Once inside the police station, the investigating police officer testified that he read [Petitioner] his Miranda[2] rights and explained those rights to him in lay terms. According to the officer, [Petitioner] never requested further explanation regarding any of his rights, but he signed the portion of the form acknowledging that he understood his rights. The officer testified that after he read [Petitioner] his rights, he proceeded to read a waiver of rights form, which [Petitioner] also signed.

[Petitioner], however, testified that the police never read him his Miranda rights. [Petitioner] also stated that the acknowledgment and waiver of rights form was never read or presented to him, and he signed it without knowledge of the form's contents.

Furthermore, [Petitioner] denied that the police ever showed him his custodial statement or read it to him, but he admitted to signing the custodial statement and to initialing it four times in the corners of the document. He also claimed he told the police he did not sexually assault S.S., and only the part about S.S. rubbing his back outside his mobile home was accurate. The custodial statement reads:

> On Saturday December 6, 2003[,] I Willie was outside working on my car[,] a 1995 Chevy Silver in color. [S.S.] came outside where I was. I was on my knees unlocking my hood because it's chained down. While I was on my knees, [S.S.] jump [sic] on my back and started working up on me. [S.S.] also started touching my penis. [S.S.] grab [sic] my hand and put it on her vagina. I started touching her back. She got my penis hard. She also put my hands through the leg part of her pants. She try [sic] to put my hands inside her vagina.

When asked why he would sign a confession without reading it or having it read to him, [Petitioner] stated he "didn't really read it"; rather, he "read across [it]" but "didn't read it

---

[2]     Miranda v. Arizona, 384 U.S. 436 (1966).

3

word for word."  When further questioned as to whether he would be concerned about what he signed, given that he did not read its contents, [Petitioner] said he was not worried until afterwards when the police told him that he was under arrest.

Conversely, the investigating police officers testified that they read [Petitioner's] confession back to him.  Moreover, they stated [Petitioner] was allowed to read the statement, and he was in no way prohibited from altering or changing it if he wanted.

[Doc. 18-6 at 2–4.]

**Direct Appeal**

Petitioner timely filed a notice of appeal on August 23, 2004.  [Doc. 18-3.]  Petitioner asserted the lower court erred "by admitting into evidence [his] custodial statement, when the state did not prove beyond a reasonable doubt that the statement was voluntary, and when the statement concerned a different incident than that described by the alleged victim."[3]  [Doc. 18-4 at 6.]   In an unpublished opinion filed December 18, 2006, the South Carolina Court of Appeals affirmed Petitioner's conviction.  [Doc. 18-6.]  The remittitur was issued on January 4, 2007.  [Doc. 18-7.]

**PCR Proceedings**

Petitioner filed a pro se application for post-conviction relief ("PCR") on March 2, 2007 [App. 287–98], alleging ineffective assistance of trial and appellate counsel and void indictment [App. 288].  Petitioner also asserted that he was not put on notice by the prosecutor pursuant to S.C. Code Ann. § 17-25-45(c)(1). [App. 291.]  As supporting facts for his ineffective assistance of trial counsel claim, Petitioner argued that "TRIAL COUNSEL AGREED TO 'PRIMA FACIE TRIAL'; FAIL[ED] TO INVESTIGATE WHY NO

---

[3] On appeal, Petitioner was represented by Aileen P. Clare.  [Doc. 18-4.]

4

DNA EVIDENCE WAS PRESENTED IN THE CASE; [and] FAILE[D] TO MAKE CONTEMPORANEOUS." [App. 289.] In the attachments to his PCR application, Petitioner further alleged that counsel was ineffective for not moving to dismiss the case on lack of evidence of *corpus delicti*; failing to conduct a reasonable pretrial investigation—e.g., counsel failed to obtain an independent evaluation of the forensic evidence in the case, counsel failed to interview witnesses, and counsel failed to fully understand the implications of Petitioner's statement; agreeing to a prima facie trial, which was the equivalent of a guilty plea; and representing a conflict of interest, causing counsel to abandon the duty of loyalty to Petitioner and effectively join the State. [App. 293–96.] As supporting facts for his ineffective assistance of appellate counsel claim, Petitioner argued that "APPELLATE COUNSEL FAILED TO SEEK REVIEW OF THE APPEALS COURT['S] ERRO[]NEOUS RULING REGARDING THE ASSISTANT SOLICITOR'S MISSTATEMENT IN THE RECORD." [App. 289.] In the attachments to his PCR application, Petitioner further alleged that appellate counsel failed to provide Petitioner with an opportunity to file a petition with the South Carolina Supreme Court. [App. 296.] As supporting facts for his void indictment claim, Petitioner argued in the attachments to his PCR application that there was irregularity in the grand jury proceedings because the grand jury failed to deliberate and vote on the actual indictment. [App. 297.]

The State made a return to Petitioner's PCR application on October 10, 2007. [App. 299–303.] Petitioner filed an amended PCR application on October 19, 2007. [Doc 18-2.] In the amended application, Petitioner was represented by Charles T. Brooks, III ("Brooks"), and asserted the charge had the incorrect date and that members of the jury panel were not fair and impartial. [*Id*.] Petitioner also argued that his statement did not

5

accurately reflect what he said happened and that the statement was inconsistent with the indictment. [*Id.*]    An evidentiary hearing was held on September 15, 2008. [App. 307–33.] At the evidentiary hearing, Petitioner continued to be represented by Brooks, and the PCR court heard testimony from Petitioner and trial counsel, Johnson. [*Id.*] On November 6, 2008, the PCR court denied and dismissed Petitioner's PCR application. [App. 334–39.]

Petitioner noticed his appeal on November 19, 2008 [App. 340], and on March 26, 2009, Robert M. Pachak filed a *Johnson* petition for writ of certiorari on Petitioner's behalf [Doc. 18-8]. The *Johnson* petition raised the following issue: "Whether trial counsel was ineffective in failing to object to the jury pool [] which contained jurors related to the solicitor and/or an investigating officer?" [Doc. 18-8 at 3.] In response to the *Johnson* petition, Petitioner filed a pro se brief, asserting the December 8th statement should not have been admitted into evidence, the solicitor gave an improper basis for allowing the statement to be admitted into evidence, and the indictment was invalid because State did not present any evidence that linked Petitioner to the allegations contained in the indictment. [Doc. 18-9.] Certiorari was denied on March 9, 2010. [Doc. 18-10.] Petitioner's petition for rehearing was likewise denied. [Doc. 18-12.] The Supreme Court issued remittitur on March 25, 2010. [Doc. 18-13.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this petition for writ of habeas corpus on May 24, 2010 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**: Indictment Void or Violation of the 5th & 14th Amendment[s] of the Constitution of the United State[s]

**Supporting Facts**: The common law also required the concurrence of at least twelve of the jurors to find an indictment . . . the function of the grand jury as a body that is at least twelve members thereof finding probable cause to accuse a person of a certain crime is fundamental to the [i]ntegrity of the grand jury proceeding. A valid indictment or presentment can be made only by a grand jury and no court or prose[c]utor can properly make an indictment in the first instance. Or alter or amend the substance of an indictment returned by a grand jury. Accordingly the irregularity in the grand jury proceeding at issue here specifically, the failure of the grand jury to deliberate and vote upon the actual indictment was a fundamental error which so compromised the structural protection of the grand jury as to constitute prejudice per se. The signature of the foreman on the indictment cannot in itself convert the indictment admittedly not seen by the full grand jury into one properly found by 12 jurors as required by Rules of the Criminal Procedure.

**Ground Two**: Involuntary Statement or Self Incrimination Violation of the 5th & 14th Amendment of the United State[s] Constitution

**Supporting Facts**: Of course the South Carolina Law i[s] not controlling here. Despite the fact that the crime was allegedly committed in this state South Carolina as defined confession in legal sense is restricted to acknowledgment of guilt and does not apply to a misstatement of fact from which guilt may be inferred[.] See unpublished opinion No. 2006-UP-418[.] The appeals court held that the State misspoke when one of several reasons for the custodial statements relevance it said the statement showed his propensity to engage in sexual misconduct. The State did not offer and the trial court did not use[] the statement to establish [Petitioner's] proclivity to commit this type of crime. Rather the statement was offered as substantive evidence of [Petitioner's] version of the incident unquote[.] See (initial Brief)[.] It can be easily seen here that the statement made by the accused [Petitioner] to the Investigators John Shaw and J.D. Dellinger do not constitute a confession or an admission (Tr. Pp. 42-43)[.] Thus it becomes a quest[i]on of whether or not the trial judge committed error in instructing the jury to the voluntariness of a confession which was not a confession.

**Ground Three**: Jury Panel (tainted) violated the 5th 6th & 14th Amendment of the US. Constitution to a fair and impartial trial.

**Supporting Facts**: Jury pool or panel had relatives of Investigator John Shaw Harold Brisbon Mrs Mary Alice Thomas stated Mrs Moses was her first cousin by marriage and that Mr John Shaw is her cousin by marriage they were qualified as jury members even if they were not pick[ed] to sit on the trial case they knew other jury members that were pick[ed] and or have talk[ed] and have each other phone

numbers etc to talk about the case without anyone else knowing Mr Paul Fata represented Ms Marilyn Geddings and she was qualified as a juror this is not fair or impartial but bias and prejudiced in having a fair trial with family members and relatives qualified as jurors on the solicitor side[.]

**Ground Four**: Ineffective assistance of trial lawyer.

**Supporting Facts**: An adequate[] defense cannot be framed if the lawyer does not know what is likely to develop at trial in criminal litigation as in other matters information is the key guide to decisions and action. The lawyer who is i[gn]orant of the facts of the case cannot serve the client effective counsel did not obtain[] an independent evaluation of the forensic evidence in the case. Such an investigation of may have led to information useful in creating a defense to the charges especially since (Jane) exhibit past injury that had now heal tr. p. lines 20-22)[.]  Counsel failure to interview witnesses deprived [Petitioner] of the opportunity of making an informed assessment of the strengths and weaknesses of the State[']s case without attempting to ascertaining specifically what the testimony or the State witnesses would be in general counsel']s ability to cross examine the State[']s witnesses effectively was seriously compromised by his failure to interview them. Since he would have little idea as to the specific area of testimony which could be challenged counsel lack of knowledge about the testimony of witnesses is seen throughout the trial See eg., tr. pp. 149-137 cross examination of medical examiner evidence) examination of investigating officers John Shaw and J.D. Dellinger).

Trial lawyer was ineffective because he fail[ed] to investigate and keep [Petitioner] inform[ed] with information concerning the charges of the case so that [Petitioner] could be prepared to create an[] adequate defense at trial. Trial counsel fail[ed] to object to the statement being admitted when it was ask[ed] by the court to believed if it is admitted into evidence. He fail[ed] to present or ask for physical evidence concerning the elements of the indictment.  Such as D.N.A. evidence and or additional testing for the S.T.D. disease call Chlamydia in which the victim was found to have had. Counsel agreed to present a prima facie trial in which the way he presented his opening statement on Page 18 of the trial transcript. Counsel fail to object to the case being reopen by the solicitor after the state had rested their case.

[Doc. 1.]  As previously stated, Respondent filed a motion for summary judgment on September 7, 2010 [Doc. 17], which is now ripe for review.

8

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).   Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal. *Id.* at 520–21.   The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).   Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

10

> or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (i) there is an absence of available State corrective process; or

12

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

13

judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged

constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating

to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Murray*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## **DISCUSSION**

**Procedurally Barred Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  It is a petitioner's burden to raise cause and prejudice or actual innocence.  *Murray*, 477 U.S. at 485, 497.  If not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens*, 66 F.3d at 1363.

Respondent acknowledges that Petitioner has exhausted his available state court remedies.  [Doc. 18 at 18.]  Respondent argues, however, that Grounds One, Three, and Four[5] are procedurally barred because Petitioner did not properly raise these claims in state court.  [Doc. 18 at 19–25.]  The Court agrees that these claims are procedurally

---

[5]While Respondent initially states that "*[s]everal* of Petitioner's claims in Ground Four are procedurally barred" [Doc. 18 at 21 (emphasis added)], Respondent later states that "Grounds One, Three, and *all* of Petitioner's claims in Ground Four are procedurally barred" [Doc. 18 at 24 (emphasis added)].  A review of Respondent's memorandum of law in support of motion for summary judgment reveals that Respondent makes individual arguments as to why each of Petitioner's claims in Ground Four is procedurally barred. Accordingly, Respondent argues that all of Petitioner's claims in Ground Four are procedurally barred.

barred from federal habeas review.

### *Ground One*

With respect to Ground One—"Indictment Void or Violation of the 5th & 14th Amendment[s] of the Constitution of the United State[s]"—Petitioner failed to challenge the sufficiency of the indictment at trial or on direct appeal; therefore, this claim is procedurally barred.

In a late nineteenth century case, the South Carolina Supreme Court explained the importance of an indictment:

> "The indictment is the charge of the state against the defendant, the pleading by which he is informed of the fact, and the nature and scope of the accusation. When that indictment is presented, that accusation made, that pleading filed, the accused has two courses of procedure open to him. He may question the propriety of the accusation, the manner in which it has been presented, the source from which it proceeds, and have these matters promptly and properly determined; or, waiving them, he may put in issue the truth of the accusation, and demand the judgment of his peers on the merits of the charge. If he omits the former, and chooses the latter, he ought not, when defeated on the latter[—]when found guilty of the crime charged[—]to be permitted to go back to the former, and inquire as to the manner and means by which the charge was presented."

*State v. Faile*, 20 S.E. 798, 801 (S.C. 1895) (quoting *Ex parte Wilson*, 140 U.S. 575 (1891)). Under South Carolina law, any objection to an indictment must be made before the jury is sworn. S.C. Code Ann. § 17-19-90; *State v. Fonseca*, 681 S.E.2d 1, 3 (S.C. Ct. App. 2009). For a time, South Carolina law conflated subject matter jurisdiction and the sufficiency of an indictment such that S.C. Code Ann. § 17-19-90 was not strictly applied. *See State v. Gentry*, 610 S.E.2d 494, 498–500 (S.C. 2005). However, in *Gentry*, the Supreme Court held, "[I]f an indictment is challenged as insufficient or defective, the

18

defendant must raise that issue before the jury is sworn and not afterwards." *Id.* at 499.

Here, Petitioner failed to challenge the validity and sufficiency of the indictment at trial or on direct appeal. Instead, Petitioner raised the claim for the first time in his PCR application. However, "[i]ssues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel." *Drayton v. Evatt*, 430 S.E.2d 517, 520 (S.C. 1993) (citing *Hyman v. State*, 299 S.E.2d 330 (S.C. 1983)). Because Petitioner did not raise this issue as an ineffective assistance of counsel claim, it is barred from collateral review at the state level, *see id.*, and, therefore, procedurally barred from federal habeas review absent a showing of cause and actual prejudice.

### Ground Three

With respect to Ground Three—"Jury Panel (tainted) violated the 5th 6th & 14th Amendment of the US. Constitution to a fair and impartial trial"—Petitioner failed to directly challenge the jury panel at trial or on direct appeal; therefore, this claim is procedurally barred.

A claim that a jury was not impartial is one that can be raised at trial or on direct appeal. *See, e.g.*, *State v. Bixby*, 698 S.E.2d 572, 580 (S.C. 2010) (addressing question of partiality of juror and holding that defendant must first raise juror qualification issues at trial by exhausting peremptory strikes); *State v. Nicholson*, 623 S.E.2d 100, 104–05 (S.C. Ct. App. 2005) (addressing question of partiality of juror and noting that the trial judge makes the initial determination regarding that qualification of a juror after examining the juror). As previously stated, "[i]ssues that could have been raised at trial or on direct

appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel." *Drayton*, 430 S.E.2d at 520 (citing *Hyman*, 299 S.E.2d 330).

Here, Petitioner raised a direct challenge to the partiality of the jury in his amended PCR application but failed to raise the issue at trial or on direct appeal.[6]  To the extent Petitioner was directly challenging the jury pool in his amended PCR application, as opposed to raising an ineffective assistance of counsel claim, that claim could have been raised at trial and on direct appeal and was, therefore, not appropriate for PCR review. Likewise, Petitioner raised Ground Three of this Petition as a direct challenge to the jury pool and not as an ineffective assistance of counsel claim.  Because Petitioner did not raise this issue as an ineffective assistance of counsel claim, it is barred from collateral review at the state level, *see Drake*, 430 S.E.2d at 520 , and, therefore, procedurally barred from federal habeas review absent a showing of cause and actual prejudice.[7]

---

[6]The PCR court treated Petitioner's challenge to the jury pool as a claim of ineffective assistance of counsel for failure to object to the jury pool. [App. 336–37.]  The Court notes that Petitioner has raised issues regarding the partiality of the jury as both direct challenges to the jury pool and as ineffective assistance of counsel claims.  [*See* App. 304 (amended PCR application, discussing challenges to jury pool but not in the context of an ineffective assistance of counsel claim); Doc. 18-8 at 3 (*Johnson* petition, raising issue of "[w]hether trial counsel was ineffective in failing to object to the jury pool . . ."); Doc. 1 at 8, 17 (Petition, stating Ground Three and supporting facts as challenge to partiality of jury pool but not in the context of an ineffective assistance of counsel claim).]

[7]In the *Johnson* petition in state court, Petitioner raised the issue regarding the partiality of the jury pool as an ineffective assistance of counsel claim.  [Doc. 18-8 at 3.]  Accordingly, the only issue properly presented to the Supreme Court of South Carolina and, therefore, available if raised for federal habeas review, is whether counsel was ineffective for failing to object to the jury pool.  However, Petitioner did not renew that ineffective assistance of counsel claim in this Petition despite his clear understanding of how to raise an ineffective assistance of counsel claim.  [*See* Doc. 1 (raising four grounds for relief, including ineffective assistance of counsel, but raising the challenge to the partiality of the jury as a separate direct challenge).]

***Ground Four***

With respect to Ground Four—"Ineffective assistance of trial lawyer"—Petitioner did not properly present these issues to the Supreme Court of South Carolina in his petition for writ of certiorari from the denial of his PCR application; therefore, this claim is procedurally barred.

The supporting facts related to Petitioner's ineffective assistance of counsel ground indicate that Petitioner asserts seven claims of ineffective assistance of counsel: (1) failure to obtain an independent evaluation of the forensic evidence in the case; (2) failure to interview witnesses; (3) failure to investigate and keep Petitioner informed with information concerning the charges of the case; (4) failure to object to the statement being admitted; (5) failure to present or ask for physical evidence concerning the elements of the indictment; (6) agreeing to present a prima facie trial; and (7) failure to object to the case being reopened by the solicitor after the State had rested. [Doc. 1 at 18–19.] Although many of these claims were raised in Petitioner's initial PCR application, none of them were raised in Petitioner's petition for writ of certiorari from the denial of his PCR application.[8] Therefore, these issues were not fairly presented to the Supreme Court of South Carolina and are procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to

---

[8]The only ineffective assistance of counsel raised in his petition for writ of certiorari was whether counsel was ineffective for failure to object to the jury pool [Doc. 18-8 at 3], which is not one of Petitioner's claims of ineffective assistance of counsel in this Petition. The Court is aware that in his pro se brief in the petition for writ of certiorari, Petitioner raised an issue related to the statement being admitted into evidence. [Doc. 18-9 at 2–3.] However, that was a direct challenge to the statement being admitted, and not an ineffective assistance of counsel claim for failure to object to the statement, as indicated by Petitioner's assertion, "I objected to the statement being admitted into evidence and my trial attorney as well objected to it being admitted. The Court denied our motion and admitted into evidence the statement." [Doc. 18-9 at 3.]

the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Cause and Prejudice*

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Grounds One, Three, and Four. Petitioner filed a petition for writ of certiorari in which these issues could have been raised; however, these issues were not raised in Petitioner's petition for writ of certiorari to the South Carolina Supreme Court, even though other issues were properly raised. Petitioner cannot establish cause and actual prejudice because he abandoned the opportunity to preserve these specific issues. Therefore, the Court recommends that summary judgment be granted as to Grounds One, Three, and Four.

### Ground Two—Involuntary Statement or Self-Incrimination[9]

In Ground Two, Petitioner asserts that the trial court erred by admitting his

---

[9] The Court notes that it appears Petitioner did not present this claim to the South Carolina Supreme Court, and as a result, this basis for relief may be procedurally barred. *See Matthews*, 105 F.3d at 911 ("To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."); *Teague*, 489 U.S. at 297–98 (stating that when a petitioner has procedurally bypassed his state remedies, the exhaustion requirement is technically met, and the rules of procedural bar apply). However, Respondent failed to argue that Ground Two is procedurally defaulted, and the Court is not required to *sua sponte* raise the issue of procedural default. *Trest v. Cain*, 522 U.S. 87, 89 (1997). A federal habeas court has the jurisdiction to consider a petitioner's procedurally defaulted constitutional claims. *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999). A federal habeas court also has the discretion, in the interest of comity, "to ignore the failure of a state to assert a defense founded upon procedural default." *Id.* In this case, because Petitioner did not have notice of and a reasonable opportunity to respond to a defense of procedural default to Ground Two, *id.* at 262 (quoting *Magouirk v. Phillips*, 144 F.3d 348, 357-58 (5th Cir.1998)), the Court declines to exercise its discretion to apply a procedural bar and will consider the merits of Petitioner's claim.

statement because the statement was not voluntary and was not a confession. [Doc. 1 at 16.] Petitioner raised this issue in his direct appeal. [Doc. 18-4.] The Court of Appeals found that the trial court did not err in admitting the statement. [Doc. 18-6.]

The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, the United States Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive. 384 U.S. 436, 458 (1966). To ensure the Fifth Amendment privilege against self-incrimination is not undermined in custodial interrogations, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting. *See id.* at 444. Specifically, *Miranda* requires that before any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney. *See id.* "The Court's fundamental aim in designing the *Miranda* warnings was 'to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.'" *Colorado v. Spring*, 479 U.S. 564, 572 (1987) (quoting *Miranda*, 384 U.S. at 469). The Supreme Court has held that "*Miranda* announced a constitutional rule that Congress may not supersede legislatively." *Dickerson v. United States*, 530 U.S. 428, 444 (2000). Following the rule of stare decisis, the Supreme Court further declined to overrule the *Miranda* decision, which "has become embedded in the routine police practice to the point where the warnings have become part of our national culture." *Id.*

To ensure that law enforcement officials comply with *Miranda*'s requirements, the Supreme Court established an exclusionary rule, holding that statements obtained in violation of *Miranda* must be excluded from the prosecution's case-in-chief even if the statements are otherwise voluntary within the meaning of the Fifth Amendment. *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). The failure to administer *Miranda* warnings creates an irrebuttable presumption of compulsion, requiring the suppression of the accused's statements for purposes of the prosecution's case-in-chief. *Id.* at 306–07.

A suspect may waive his *Miranda* rights after receiving the required warnings and agree to answer questions or make a statement during custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *see Spring*, 479 U.S. at 572; *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In such a case, the suspect's statements are not "compelled" within the meaning of the Fifth Amendment and may be introduced against him in the prosecution's case-in-chief without implicating constitutional concerns. *See Spring*, 479 U.S. at 573. The question of whether an accused has validly waived his *Miranda* rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *see Spring*, 479 U.S. at 573. "Only if the 'totality of the circumstances surrounding the interrogation,'" including the background, experience, and conduct of the accused, "reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude

24

that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)); *see North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

When determining whether a valid waiver has been made, the court need not inquire into the state of mind of the police, which is "irrelevant to the question of the intelligence and voluntariness of the suspect's election to abandon his rights." *Moran*, 475 U.S. at 423. The "Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," such as that he may be questioned and his statements used against him in a different criminal investigation. *Spring*, 479 U.S. at 574. Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Moran*, 475 U.S. at 422. As long as a suspect's voluntary decision to speak to law enforcement officials is made with full awareness and comprehension of all the information *Miranda* requires the police to convey—i.e., that the suspect has the constitutionally-protected right to remain silent and to have an attorney present during custodial interrogation and that whatever the suspect chooses to say in response to police questioning may be used as evidence against him—the suspect's waiver is knowing and intelligent within the meaning of *Miranda*. *See Spring*, 479 U.S. at 574–75; *Moran*, 475 U.S. at 422–24.

On federal habeas corpus review of a petitioner's state conviction, the petitioner has the burden of proving that he did not competently and intelligently waive his constitutional rights. *Johnson*, 304 U.S. at 468–69 (involving waiver of right to assistance of counsel).

25

Although the ultimate determination of a valid *Miranda* waiver is a mixed question of law and fact not subject to the presumption of correctness, *Boggs v. Bair*, 892 F.2d 1193, 1199 (4th Cir. 1989) (citing *Miller v. Fenton*, 474 U.S. 104 (1985)), the state court's factual findings supporting its waiver determination are presumed correct under 28 U.S.C. § 2254(e)(1).   Moreover, in this federal habeas corpus proceeding, the state court's disposition of Petitioner's *Miranda* claim will not be overturned unless it (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) was based on an unreasonable determination of the facts in light of the record evidence. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 402–03.

The Court of Appeals held that the trial court did not err in admitting the statement. [Doc. 18-6 at 5.]  In an unpublished opinion, the Court of Appeals found,

> The trial court found that [Petitioner's] custodial statement was freely and voluntarily given, that the police afforded [Petitioner] the proper procedural safeguards, and that [Petitioner] knowingly and intelligently waived his rights. [Petitioner] signed both the waiver of rights form and his confession.   Two investigating officers, who were present during this time, corroborated that [Petitioner] signed both forms.  Further, they testified that [Petitioner] was afforded all the procedural safeguards required by law, and at no time did they prohibit [Petitioner] from altering or changing his confession.
>
> Although [Petitioner] testified in court that the police did not read his <u>Miranda</u> rights to him and that he did not knowingly and intelligently waive his rights, there is ample evidence to the contrary.

[*Id.*]

The evidence in the record establishes that Petitioner signed both a waiver of rights form, which included a recitation of *Miranda* warnings [App. 281], and his witness

26

statement [App. 282]. The trial court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and found that the statement was voluntarily given. [App. 38–54; *see also* App. 55–56 (relating to the defense's objection to the statement's relevancy).] Because the Court of Appeals' decision is supported by the record, Petitioner is unable to establish that the Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence, as required by 28 U.S.C. § 2254(d). Accordingly, the Court recommends that summary judgment be granted as to Ground Two.[10]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 29, 2011
Greenville, South Carolina

---

[10]To the extent Petitioner maintains in this Petition, as he did on direct appeal, that the statement was not relevant, that is not a claim upon which federal habeas corpus can be granted because it raises a state evidentiary matter. *See Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960) (holding that absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a federal question); *Estelle v. McGuire*, 502 U.S. 62 (1991) (stating that generally, an error in interpretation of a state evidentiary standard does not give rise to a due process violation).

27